# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| James B. Goodman, | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | NO. 4:16-CV-3195 |
| Hewlett-Packard Company, | § | |
| | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 45.[1] The parties appeared before the Court on July 6, 2018 to argue the motion.[2] Having considered the arguments of counsel and the record, which contain both factual evidence and applicable legal authorities, the Court recommends that Defendant's Motion for Summary Judgment should be granted.[3]

## I.
## FACTUAL OVERVIEW

Plaintiff James Goodman ("Plaintiff" or "Goodman") filed this suit against

---

[1] Plaintiff filed a response, ECF No. 53, and Defendant filed a reply, ECF No. 55. Plaintiff also filed a supplemental letter, ECF No. 67.

[2] On July 9, 2018, following oral argument regarding Defendant's Motion for Summary Judgment, Plaintiff filed an unopposed Motion to Dismiss his complaint. ECF No. 64. The motion is pending before the district judge.

[3] The district judge referred the motion for summary judgment for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 54. Pursuant to 28 U.S.C. § 636(b)(1)(A), a motion for summary judgment is a dispositive motion.

HP, Inc. (formerly known and sued as Hewlett-Packard Company) ("Defendant" or "HP") for patent infringement under 35 U.S.C. §§ 271, 281 on October 30, 2016. Complaint, ECF No. 1. Defendant makes and sells computer-related products, some of which incorporate memory products known in the computer industry by the designations DDR3, DDR3L,[4] DDR4, and LPDDR4[5] ("accused products"). *Id.* at ¶ 10. Following denial of Defendant's Motion to Dismiss,[6] Defendant filed an Answer with a counterclaim for a declaratory judgment of non-infringement and invalidity of the patent.[7] ECF No. 32. On December 20, 2017, Plaintiff served infringement contentions on Defendant. Ex. 2 to Declaration of Nader Bagherzadeh ("Bagherzadeh Dec."), ECF No. 45-4. On January 12, 2018, Plaintiff served amended infringement contentions. Pl.'s Am. Infringement Contentions, Ex. 3 to Bagherzadeh Dec., ECF No. 45-5. On February 16, 2018, the parties filed a joint claim construction statement, agreeing on the construction of all relevant claim terms.[8] Joint Claim Construction, Ex. A to Pl.'s Opp'n, ECF No. 53-1. The

---

[4] DDR3 and DDR3L memory products will be collectively referred to herein as "DDR3" memory products or devices.

[5] DDR4 and DDR4L memory products will be collectively referred to herein as "DDR4" memory products or devices.

[6] Defendant filed a Motion to Dismiss, ECF No. 18. This Court recommended the motion be denied, ECF No. 29. The district judge adopted the Report and Recommendation, ECF No. 30.

[7] While Defendant's counterclaim addresses invalidity of the patent, Defendant only raised arguments regarding non-infringement in its Motion for Summary Judgment.

[8] The parties largely adopted claim constructions from a prior case, *Goodman v. Smart Modular Technologies, Inc.* No. 4:16-CV-3195 (S.D. Tex.), which involved the same infringement allegations as in this case. In that case, the court appointed a special master to construe the

Court entered an order approving the joint claim constructions. ECF No. 49.

The following are the pertinent undisputed facts:

## A. Plaintiff's Patent and Infringement Allegations.

Plaintiff is the sole owner of United States Patent No. 6,243,315, ("'315 Patent") titled "Computer Memory System with a Low Power Mode." ECF No. 1 at ¶¶ 26–27. Plaintiff applied for the patent on December 31, 1999, and the patent was issued June 5, 2001. '315 Patent, Ex. 1 to Bagherzadeh Dec., ECF No. 45-3. The invention involves

> a memory system for use in a computer system including a solid state volatile memory device that is capable of retaining information when a voltage is applied to it and capable of being placed in a self refresh mode is placed in a low power standby mode when the memory system is not receiving requests for access.

*Id*. at 63 (3:46-52).

Plaintiff's Complaint asserts that "[a]ll the limitations of Claim 1 of the '315 Patent are present in HP related computer products incorporating at least one DDR3, DDR3L, DDR4, or LPDDR4 memory product manufactured, offered for sale, and being sold directly or indirectly by HP in this Federal Judicial District." ECF No. 1 at ¶ 28. The only claim in dispute is claim 1 of the asserted patent, which states:

---

claims. Ex. 6 to Bagherzadeh Dec., ECF No. 45-8. The district judge adopted the special master's report and recommendation regarding claim constructions. Ex. 7 to Bagherzadeh Dec., ECF No. 45-9. In this case, the parties agreed to adopt the claim constructions from the *Smart* case as to all but two terms, and agreed to new constructions for the remaining two terms. ECF No. 53-1.

A memory system for use in a computer system, said memory system comprising:

    a plurality of volatile solid state memory devices that retain information when an electrical power source is applied to said memory device within a predetermined voltage range and capable of being placed in a self refresh mode; said memory devices having address lines and control line;

    a control device for selectively electrically isolating said memory devices from respective address lines and respective control lines so that when said memory devices are electrically isolated, any signals received on said respective address lines and respective control lines do not reach said memory devices;

    a memory access enable control device coupled to said control device and to said control lines for determining when said memory system is not being accessed and for initiating a low power mode for said memory system wherein said control device electrically isolates said memory devices and places said memory devices in said self refresh mode, thereby reducing the amount of electrical energy being drawn from an electrical power supply for said computer system.

ECF No. 45 at 7; Ex. 3 at 2, ECF No. 45-5.

## B. DDR3 and DDR4 Memory Devices.

An image of one of Defendant's memory modules incorporating DDR4 memory devices is reproduced below.



Def.'s Hr'g Ex. at 2, ECF No. 63. The memory devices referred to in the Plaintiff's patent are the black circuits, or chips, depicted on the memory module. July 6, 2018 Oral Argument ("Oral Arg.") at 9:09-9:11. The full memory module is typically placed in a socket on the motherboard of a laptop, server, or computer. Oral Arg. at 9:10; ECF No. 1 at ¶ 21.

**C. Industry Standards.**

It is undisputed that Defendant's DDR3 and DDR4 memory devices comply with the Joint Electron Device Engineering Council ("JEDEC") Solid State Technology Association published industry standards JESD79-3F and JESD79-4, respectively. ECF No. 1 at ¶¶ 10-13; Ex. 3 at 3, 6-10, 12-13, 15-16, ECF No. 45-5. According to the JEDEC standards, it is undisputed that no refresh is possible when the DDR3 or DDR4 memory devices are in the "power down mode." ECF No. 45 at 15; ECF No. 53 at 17.

**D. Plaintiff's Prior Case Against Smart Modular Technologies.**

Plaintiff previously filed a case against Smart Modular Technologies, Inc. ("Smart") on May 18, 2014 for patent infringement. *Goodman v. Smart Modular Technologies, Inc.*, No. 4:14-CV-1380 (S.D. Tex., filed May 18, 2014), ECF No. 1. Plaintiff accused Smart's DDR3 and DDR4 products, when used or tested as part of a computer system, as infringing claim 1 of the '315 patent. Pl.'s Second Am. Compl. (*Goodman v. Smart Modular Technologies*), Ex. 3 to Declaration of Barry

Shelton ("Shelton Dec.") at ¶¶ 11, 19, 23, ECF No. 46-3; Pl.'s Infringement Contentions (*Goodman v. Smart Modular Technologies*), Ex. 5 at 3, ECF No. 46-5. In the *Smart* case, the parties attended mediation. ECF No. 45 at 11; ECF No. 53 at 8. They reached a settlement agreement, memorialized it in a settlement term sheet, and filed it with the court. ECF No. 45 at 11-12; ECF No. 53 at 8. The settlement term sheet stated: "Goodman shall stipulate that all accused products do not infringe his U.S. Patent No. 6,243,315." ECF No. 45 at 12; ECF No. 53 at 8. The parties disputed the interpretation of this provision and the phrase "accused products." ECF No. 45 at 12; ECF No. 53 at 8.

The *Smart* court ruled on the interpretation of the phrase and held that "the DDR2, DDR3, and DDR4 are the 'accused products.'" ECF No. 45 at 12; ECF No. 53 at 8. Thereafter, the parties jointly filed a stipulation which stated: "Plaintiff has alleged that Defendant's DDR2, DDR3, and DDR4 products (the 'Accused Products') infringe either directly or indirectly Plaintiff's U.S. Patent No. 6,243,315" and "Plaintiff stipulates and requests that it be adjudged that none of the Accused Products infringe the '315 patent under 35 U.S.C. section 271." ECF No. 45 at 12; ECF No. 53 at 8-9. The *Smart* court approved the stipulation, and dismissed the case. ECF No. 45 at 12; ECF No. 53 at 8.

It is undisputed that in both cases Plaintiff alleged that Smart's and HP's DDR3 and DDR4 products complied with industry standards, and resulted in

infringement of the '315 patent when used in a computer system. Oral Arg. at 10:42-10:44; ECF No. 45 at 7-11. Plaintiff's allegations in both cases were the same—that the same type of product created the same type of infringement. Oral Arg. at 10:43, 10:52; ECF No. 45 at 7-11. The only difference between the two cases is that the prior case involved Smart's products and this case involves HP's products. Oral Arg. at 10:47, 10:53; ECF No. 45 at 7-11.

## II.
## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to its case and on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23.

"Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact." *Stewart v. U.S. Bank Nat. Ass'n*, 107 F. Supp. 3d 705, 707 (S.D. Tex. 2015). "The burden then shifts to the

nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *Id.* "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks and citation omitted).

"This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial,' and summary judgment as a matter of law must be granted." *Brown v. United States Postal Inspection Serv.*, 206 F. Supp. 3d 1234, 1242 (S.D. Tex. 2016) (quoting *Celotex*, 477 U.S. at 322–23).

The non-movant must identify specific evidence in the record and articulate how that evidence supports its claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). However, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

# III.
# LEGAL ANALYSIS

Defendant makes two arguments for why summary judgment should be granted. First, Defendant contends the accused products do not directly infringe claim 1 of the patent because they do not meet two of the limitations of the claim, and do not contain a "control device" or "memory access enable control device." ECF No. 45 at 23-27. Second, Defendant contends that judicial estoppel bars Plaintiff from arguing the accused products infringe his patent because in the *Smart* case, Plaintiff stipulated that the accused products do not infringe his patent. ECF No. 45 at 18-23.

## A. The Accused Products Do Not Directly Infringe Plaintiff's Patent.

### 1. Patent Infringement.

The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). A finding of patent infringement is based on a two-step analysis. First, the Court interprets the claims to determine their scope and meaning as a matter of law. *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1358 (Fed. Cir. 2017) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc), *abrogated on other grounds by Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015)). Second, the

properly construed claims are compared to the allegedly infringing product. *Id*. "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."[9] *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004). Whether an accused product meets each claim limitation is a question of fact. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004).

In this case, the parties already agreed to the construction of the claims. Ex. A, ECF No. 53-1. Accordingly, with regard to infringement, the only question before this Court is whether the accused products meet each limitation of claim 1.

Rather than comparing Defendant's specific products to the claim, Plaintiff relies on comparison of the industry JEDEC standards to claim 1 of the patent to show infringement. Ex. 3 at 3-4, ECF No. 45-5.

> [A] district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. … [I]f an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product.

*Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010). Conversely, Defendant compares the industry standards to claim 1 show non-infringement. ECF No. 45 at 24 (citing *Dynacore*, 363 F.3d at 1272-73). The Court "must

---

[9] Plaintiff does not appear to argue that there is infringement under the doctrine of equivalents.

therefore determine whether all [computers incorporating DDR3 or DDR4 devices] compliant with the [JEDEC] Standard[s] directly infringe" the Plaintiff's patent. *Dynacore*, 363 F.3d at 1275-76.

### 2. Defendant's computers incorporating standardized DDR3 and DDR4 devices do not meet the "selectively electrically isolating" limitation of claim 1 of the patent.

Defendant alleges that no computer incorporating standardized DDR3 and DDR4 devices can meet the following limitation:

> a control device for selectively isolating said memory devices from respective address and respective control lines so that when said memory devices are electrically isolated, any signals received on said respective address lines and respective control lines do not reach said memory devices[.]

Ex. 1 at 68 (13:26-31), ECF No. 45-3. Defendant argues that DDR3 and DDR4 memory devices are not "electrically isolated" because certain signals still arrive at the devices and remain active in "power down mode." ECF No. 45 at 23-26.

#### a. *"Don't Care" signals do not "selectively isolate" the memory device because they still arrive at the memory device.*

According to Plaintiff's infringement contentions, Plaintiff contends there are certain control signals known as "don't care" signals during "power down mode" of DDR3 and DDR4 memory devices, which electrically isolate the memory devices from address lines[10] and control lines.[11] Ex. 3 at 10, 15,

---

[10] According to the claim construction, "address lines" are construed as "lines that carry signals specifying a memory location to be accessed." Ex. A at 13, ECF No. 53-1.

ECF No. 45-5. Plaintiff contends this satisfies claim 1 of the patent.

As an initial matter, the "**power down mode**" referenced in the JEDEC DDR3 and DDR4 memory standards is synonymous with the "**low power mode**" limitation of claim 1 of the patent. The patent states "the term '**power down mode**' in the context of a volatile solid state memory device is **synonymous with 'low power standby mode.'**" Ex. 1 at 64 (5:29-31), ECF No. 45-3 (emphasis added). The patent further states that "the term '**low power standby mode**' in the context of a volatile solid state memory device means that the memory device is in a state whereby it … **is unable to respond to memory read and write requests**." *Id*. at 64 (5:21-25) (emphasis added). Likewise, the JEDEC standards specify that the DDR3 and DDR4 devices in "power down mode" cannot respond to read or write requests. Ex. 3 at 11, 16, ECF No. 45-5.

> Power-down is synchronously entered when CKE is registered low …. CKE is not allowed to go low while … read/write operation[s] are in progress.

JEDEC DDR3 Standard, Ex. 4 to Bagherzadeh Dec. at 97, ECF No. 45-6 (emphasis added); JEDEC DDR4 Standard, Ex. 5 to Bagherzadeh Dec. at 137, ECF No. 45-7 (same). Accordingly, "low power standby mode" and "power down mode" will be used interchangeably herein.

According to the agreed claim construction, "**selectively electrically**

---

[11] According to the claim construction, "control lines" are construed as "lines that carry control signals." Ex. A at 13, ECF No. 53-1. "Control signals" are construed as "signals that control the sequence of addressing and the memory mode." *Id*.

**isolating** said memory devices from respective address lines and respective control lines" is construed as "**inhibiting signals** on the respective address lines and respective control lines from the memory devices such that signals on those lines **do not arrive at the memory devices**." Ex. A at 5-7, ECF No. 53-1 (emphasis added). In addition, "**any signals** received on said respective address lines and respective control lines **do not reach said memory devices**" is construed as "any signals received on the respective address lines and respective control lines **do not arrive at the memory devices**." *Id.* (emphasis added).

Defendant offers expert evidence that in Defendant's accused products, "control signals are still active and present on the control lines and are not 'inhibit[ed]' … such that [they] do not arrive at the memory devices.' The 'don't care' condition merely means that the memory devices ignore the active signals; the active signals **still arrive** at the memory devices." Bagherzadeh Dec. at ¶ 58, ECF No. 45-1; *see also* Oral Arg. at 9:58-9:59. Thus, Defendant meets its burden to prove that in its accused products, the "don't care" signals do not meet the "selectively electrically isolating" limitation according to the claim construction. ECF No. 45 at 24.

Plaintiff asserts in his infringement contentions that when the DDR3 and DDR4 devices enter "power down mode" and there are no read or write operations, "all other signals are 'Don't Care,' thereby 'electrically isolating' the memory

device." Ex. 3 at 11, ECF No. 45-5; *see also id*. at 16 ("Note that a response of 'Don't Care,' is the same as 'electrically isolating' the memory device.").

However, as Defendant points out, Plaintiff does not explain or provide evidence of how the "don't care" signals electrically isolate the memory device. ECF No. 45 at 24. Plaintiff cites to section 4.17 and 4.28 of the DDR3 and DDR4 JEDEC standards respectively. These address the "power down mode" and "don't care" signals, but do not explain that "don't care" signals in fact "electrically isolate" the memory device or "do not arrive at the memory devices." Ex. 3 at 11, 16, ECF No. 45-5. This is insufficient to create a genuine dispute of material fact.

### b. *Control lines remain active and connected to the device even in the "self refresh mode."*

As to the same "selectively electrically isolating" limitation, Defendant presents further expert evidence that regardless of Plaintiff's contentions concerning "don't care" signals, "not all control lines are 'don't care' signals in Power Down mode." Bagherzadeh Dec. at ¶ 60, ECF No. 45-1. Thus, there are other lines that transmit signals (other than "don't care" signals) **which remain connected to the memory device**, even in "power down mode." *Id*. at ¶¶ 60-61.

Defendant's expert establishes that "in power down mode there are five control lines active for a DDR3 memory device, and four control lines active for a DDR4 memory device." ECF No. 25 at 45; *see also* Bagherzadeh Dec. at ¶ 60, ECF No. 45-1. In addition, Defendant relies on the JEDEC standards:

14

Entering power-down deactivates the input and output buffers, **excluding CK, CK#, ODT, CKE and RESET#.**

Ex. 4 at 97, ECF No. 45-6 (emphasis added).

Entering power-down deactivates the input and output buffers, **excluding CK_t, CK_c, CKE and RESET_n.**

Ex. 5 at 137, ECF No. 45-7 (emphasis added).

According to Defendant's expert, one of these control lines (known as a clock enable, or "CKE")[12] in DDR3 and DDR4 devices "is always active during Power Down mode, since CKE transitions from low to high to cause the memory device to exit Power Down mode." Bagherzadeh Dec. at ¶ 60, ECF No. 45-1. He relies on the JEDEC Standards:

Power-down is synchronously entered when CKE is registered low…. … The power-down state is synchronously exited when CKE is registered high….

Ex. 4 at 97, ECF No. 45-6 (emphasis added); Ex. 5 at 137, ECF No. 45-7 (same). Because the CKE triggers the memory device to enter and exit "power down mode," the CKE line must always be active and must always arrive at the memory device. *See* ECF No. 55 at 7.

In addition, Defendant's expert refers to a diagram from the JEDEC DDR4 standard which shows when the memory device is in either "power down mode" ("active power down" or "precharge power down") and the CKE control line is

---

[12] Ex. 4 at 29, ECF No. 45-6; Ex. 5 at 15, ECF No. 45-7.

maintained low (indicated as "CKE_L"), the memory device remains in a "power down mode," confirming that the control line remains active. Bagherzadeh Dec. at ¶ 73, ECF No. 45-1 (citing Ex. 5 at 18, ECF No. 45-7). Therefore, Defendant meets its burden to show that it is not possible for the memory device to be "electrically isolated" from such that signals from the control line "do not arrive at the memory device;" otherwise, the device would not be able to exit "power down mode." *See* ECF No. 45 at 25.

Plaintiff argues that when the CKE control line is in a high state (when the device exits the "low power mode"), it operates as a control line and is active. ECF No. 53 at 12. Plaintiff further contends, that when the CKE control line is in the low state (when the device goes into "low power mode") it does not operate as a control line. *Id.* at 12-13. According to the claim construction, "control lines" are construed as "lines that carry control signals." Ex. A at 13, ECF No. 53-1. "Control signals" are construed as "signals that control the sequence of addressing and the memory mode." *Id*. Plaintiff argues that when the CKE control line is in the low state, and the device is in low power mode, the CKE control line does not "control the sequence of addressing and the memory mode." ECF No. 53 at 13. On this basis Plaintiff contends that Defendant's expert's explanation "that the CKE goes from low to high [i]s evidence that the CKE line is a control line … would not make the CKE line a control line according to the agreed claim construction." *Id*.

However, Plaintiff does not cite to any section of the JEDEC standards or other evidence that the CKE control line functions as a control line only in the high state, and not in the low state. This is purely attorney argument, and is unsupported by evidence. Attorney argument is insufficient to preclude summary judgment. *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3653516, at *4 (E.D. Tex. May 31, 2016). Therefore, the "electrically isolating" specification requiring that "signals received on the …. control lines **do not arrive at** the memory devices" cannot be met. Accordingly, Plaintiff has failed to create a genuine dispute of material fact.

### c. *Plaintiff's submission to the Patent and Trademark Office undermines his own analysis.*

Defendant filed a petition for *inter partes* review regarding the '315 patent with the U.S. Patent and Trademark Office ("PTO"), contending claim 1 is unpatentable in light of two other patents No. 5,600,605 (referred to as "Schaefer" to whom the patent was issued) and No. 5,793,776 (referred to as "Qureshi" to whom the patent was issued). Ex. 13 to Bagherzadeh Dec. at 5, ECF No. 45-15. Defendant argues that Plaintiff's preliminary response to the PTO contradicts and undermines his own analysis for infringement. ECF No. 45 at 25.

Plaintiff's preliminary response to the PTO contends that, for the Schaefer and Qureshi patents, the CKE control line continually functions as a control line and remains active, thereby **not** "electrically isolating" the memory device.

Plaintiff argued that the memory devices covered by patents Schaefer and Qureshi function differently from claim 1 of his '315 patent, and therefore his patent is not already covered by Schaefer and Qureshi. In particular, Plaintiff argued:

1. "CKE must be a control line because it is referred to as an 'input buffer,' and it is a 'clock enable.'"

2. "Qureshi does not disable the CKE when it drives Schaefer into self refresh in contrast to the '315 patent."

3. "Thus, the combination of Qureshi and Schaefer keeps a control line (CKE) active and connected to the [memory device] even in the self refresh mode in contrast to the '315 Patent claims because Qureshi must use the CKE to communicate directly to the [memory device] to provide a command to the [memory device] in the self refresh mode."

Ex. 13 to Bagherzadeh Dec. at 8-9, ECF No. 45-15.

Defendant argues that the same reasons Plaintiff relied on to distinguish the Qureshi and Schaefer patents from the '315 patent, distinguish Defendant's products incorporating standardized DDR3 and DRR4 devices from the '315 patent. ECF No. 45 at 25. The JEDEC standards establish that, like under the Qureshi and Schaefer patents:

1. Defendant's computers incorporating standardized DDR3 and DDR4 devices also have a CKE control line referred to as an "input" buffer and "clock enable";[13]

2. the CKE is also not disabled when in "self refresh"[14] or "power down mode";[15] and

---

[13] Ex. 4 at 29, ECF No. 45-6 (identifying "CKE" as an "input" and "clock enable"); Ex. 5 at 15, ECF No. 45-7 (same).

3. the CKE remains active in the "self refresh" or "low power mode" because the CKE must communicate with the memory device to provide a command to exit "power down."[16]

*Id.* Plaintiff's PTO submission contradicts and undermines the arguments he makes here, and this provides further support for Defendant's position.

Plaintiff objects to Defendant's expert for assuming the CKE in Qureshi and Schaefer operate in the same way. ECF No. 53 at 5. However, Plaintiff does not point to any section of the JEDEC standards or other evidence demonstrating the CKE line operates in a different manner here, or that the CKE control line functions as a control line only in the high state, and not as a control line in the low state. This is insufficient to create a genuine dispute of material fact.

### 3. Defendant's computers incorporating standardized DDR3 and DDR4 devices do not meet the "low power mode/self refresh mode" limitation of claim 1 of the patent.

Defendant alleges that no computer incorporating standardized DDR3 and DDR4 devices can meet the following limitation of claim 1:

a memory access enable control device coupled to said control device and to said control lines for determining when said memory system is not being accessed and for initiating a low power mode for said memory system

---

[14] Ex. 4 at 29, ECF No. 45-6 ("Input buffers, excluding CKE, are disabled during Self-Refresh."); Ex. 5 at 15, ECF No. 45-7 (same).

[15] Ex. 4 at 97, ECF No. 45-6 ("Entering power-down deactivates the input and output buffers, excluding CK, CK#, ODT, CKE and RESET#."); Ex. 5 at 137, ECF No. 45-7 ("Entering power-down deactivates the input and output buffers, excluding CK_t, CK_c, CKE and RESET_n.").

[16] Ex. 4 at 97, ECF No. 45-6 ("Power-down is synchronously entered when CKE is registered low…. … The power-down state is synchronously exited when CKE is registered high…."); Ex. 5 at 137, ECF No. 45-7 (same).

wherein said control device electrically isolates said memory devices and places said memory devices **in said self refresh mode**, thereby reducing the amount of electrical energy being drawn from an electrical power supply for said computer system[.]

Ex. 1 at 68 (13:32-40), ECF No. 45-3 (emphasis added). Defendant contends that the "low power mode" of DDR3 and DDR4 devices does not permit refresh operations, and cannot transition to the self refresh state. ECF No. 45 at 26-27.

### a. *"Low power mode" in standardized DDR3 and DDR4 devices does not allow for refresh operations.*

As discussed above, the "**power down mode**" referenced in the JEDEC DDR3 and DDR4 memory standards is synonymous with the "**low power mode**" limitation of claim 1 of the patent. Regarding the "self refresh mode," the patent states that "the term '**low power standby mode**' in the context of a volatile solid state memory device means that the memory device is in a state whereby **it is in self refresh mode**…." Ex. 1 at 64 (5:21-25), ECF No. 45-3. According to the agreed claim construction, "**low power mode**" is construed as "the memory device is in a state whereby it **is in self refresh mode**…." Ex. A at 14, ECF No. 53-1.

Defendant presents evidence through its expert and the JEDEC standards to establish that in the accused products, "**[t]he Power Down Mode does not perform any refresh operation**." Bagherzadeh Dec. at ¶¶ 68-70, ECF No. 45-1; Ex. 4 at 50, ECF No. 45-6; Ex. 5 at 34, ECF No. 45-7. Therefore, Defendant's products incorporating standardized DDR3 and DDR4 memory devices cannot

meet this limitation. Plaintiff even concedes that "[n]o refresh is possible during a power down" in devices that comply with the JEDEC standards. ECF No. 53 at 13, 17.

Instead, Plaintiff argues that even though there can be no self refresh in the "power down mode," the memory devices **first** go into a refresh mode known as "precharge," and **then afterwards** go into "power down mode." ECF No. 53 at 17.[17] However, because the claim construction requires "low power mode" to be "**in self refresh mode**," Plaintiff's argument is unpersuasive. *See* ECF No. 55 at 7. Plaintiff stipulated to this claim construction. Ex. A at 14, ECF No. 53-1. This interpretation is also contrary to the patent itself, which defines "low power standby mode" as being "in self refresh mode." Ex. 1 at 64 (5:21-25), ECF No. 45-3; *see also id.* at 64 (6:13:32-40) (same). This does not create a genuine dispute of material fact.

> ### b. When standardized DDR3 and DDR4 devices are in the "power down mode," they cannot transition to the "self refresh mode."

Defendant further argues that when the DDR3 and DDR4 memory devices

---

[17] In Plaintiff's supplemental letter, Plaintiff provides additional attorney argument that is unsupported by expert or other evidence, and appears contrary to the express terms of the patent and agreed claim construction. ECF No. 67. Contrary to this argument, Plaintiff's infringement contentions in both the *Smart* case and this case reference the DDR3 JEDEC standards which discuss entering the Self-Refresh mode from the idle state. The infringement contentions state: "The JESD79-3F (Ex. 7) shows that the DDR3 is capable of being refreshed p.13, Sec. 2.10 for CKE, (CKE0), (CKE1) 'Self-Refresh operations (all banks idle)'; p.17, Sec. 3.1 on the diagram…." Ex. 5, ECF No. 46-5; Ex. 3, ECF No. 45-5 (same). Thus, it is central to Plaintiff's infringement claim that the accused products be refreshed while in "low power mode."

are in the "power down mode," they cannot **transition** to the "self refresh mode." ECF No. 45 at 15. Defendant's expert relies on diagrams in the JEDEC standards which depict "an overview of the possible state transitions and the commands to control them." Bagherzadeh Dec. at ¶¶ 71-73, ECF No. 45-1; Ex. 4 at 33, ECF No. 45-6; Ex. 5 at 18, ECF No. 45-7.

According to Defendant's expert and the JEDEC diagrams, the "self refresh mode" cannot be entered from any "power down mode" ("precharge power down" or "active power down") and can only be entered from an idle state. Bagherzadeh Dec. at ¶¶ 71-73; Ex. 4 at 33, ECF No. 45-6; Ex. 5 at 18, ECF No. 45-7. Both JEDEC standards also state that the "Self Refresh mode can only be entered from the All Banks Idle state." Ex. 4 at 51, ECF No. 45-6; Ex. 5 at 35, ECF No. 45-7.



**Figure 4 — Simplified State Diagram**

Bagherzadeh Dec. at 18, ECF No. 45-1 (citing Ex. 4 at 33, ECF No. 45-6).



Bagherzadeh Dec. at 19, ECF No. 45-1 (citing Ex. 5 at 35, ECF No. 45-7).

Accordingly, Defendant meets its burden to show that when the memory devices are in "power down mode," they cannot possibly be "in self refresh mode" as required by the patent and claim construction. Plaintiff makes no attempt to rebut Defendant's reliance on these diagrams and fails to create a genuine dispute of material fact.

### 4. Defendant's computers incorporating standardized DDR3 and DDR4 devices do not have a "control device" or "memory access enable control device."

Defendant further contends the above-referenced limitations of claim 1 of the patent cannot be met because the accused products do not have a "control device" or "memory access enable control device." Oral Arg. at 9:52-9:54; Def.'s Hr'g Ex. at 10-17, ECF No. 63; *see also* Def.'s Answer and Counterclaim at ¶ 51, ECF No. 32. According to the claim construction, a "control device" is construed as a means-plus-function element in accordance with 35 U.S.C. § 112(f). Ex. A at 6-8, ECF No. 53-1. The claimed function of the control device is "selectively electrically isolating said memory devices from respective address lines and respective control lines so that when said memory devices are selectively electrically isolated, any signals received on said respective address lines and respective control lines do not reach said memory devices." *Id*. The corresponding structure of a "control device" is depicted by various diagrams included in the patent. *Id*.; Ex. 1 at 9, 10, 12, 15, 44, 45, ECF No. 45-3.

A "memory access enable control device" is construed as a means-plus-function element in accordance with 35 U.S.C. § 112(f). Ex. A at 8-10, ECF No. 53-1. The claimed function is "determining when said memory system is not being accessed and for initiating a low power mode for said memory system." *Id*. The parties stipulated that "[t]he corresponding structure for the claimed

function of the 'memory access enable control device' is the same as the corresponding structure for the 'control device'" and "perform[s] the claimed function of the 'memory access enable control device' in addition to the claimed function of the 'control device.'" *Id*.; Ex. 1 at 9, 10, 12, 15, 44, 45, ECF No. 45-3.

According to the joint claim construction statement and the patent itself, "[a] typical configuration of an embodiment according to the invention is shown in the schematic in FIGS. 3A to 3O, where a control device is interposed between the [central processing unit] and the volatile solid state memory devices." Ex. A at 8, ECF No. 53-1; Ex. 1 at 64 (6:50-53), ECF No. 45-3; *see also, e.g.,* Oral Arg. at 9:52; Ex. 1 at 9, 10, 12, 15, 44, 45, ECF No. 45-3. As counsel explained during the hearing, current DDR3 and DDR4 technology does not require a separate "control device" or "memory access enable control device." Oral Arg. at 9:52-9:54. Today's DDR3 and DDR4 technology, known as synchronous random access memory (SRAM), was developed in the 2000s and instead uses a clock signal. *Id*. at 9:15-9:17, 9:37-9:38, 9:52-9:54. This did not exist at the time Plaintiff's invention was developed. *Id*. The RAM technology available at the time Plaintiff's invention was developed was asynchronous. *Id*. The new technology superseded the need for Plaintiff's patent.

Plaintiff does not provide any evidence and does not identify "control device" or "memory access enable control device" in Defendant's accused

products other than "the mother board of the computer system." Bagherzadeh Dec. at ¶¶ 54, 65, ECF No. 45-1; Ex. 3, ECF No. 45-5.

### 5. Defendant's computers incorporating standardized DDR3 and DDR4 devices do not do not infringe the patent.

Defendant meets its burden to prove that the accused products do not meet at least two of the limitations of claim 1 of the patent, and that the accused products do not infringe the patent. "There is nothing in the [JEDEC] Standard[s] implying that compliant [devices] will meet [all the] limitation[s]" of claim 1 of the patent. *Dynacore*, 363 F.3d at 1277. "To the contrary, the requirements of the [JEDEC] Standard[s] suggest that most if not all compliant [devices] will not meet" the limitations of the claim. *Id*.

Plaintiff "must demonstrate factual disputes sufficient to render its direct … infringement theor[y] legally tenable." *Dynacore*, 363 F.3d at 1267.[18] However, Plaintiff has provided no contrary evidence, expert testimony, or legal authorities; only attorney argument. Plaintiff has not "presented anything other than speculation." *Dynacore*, 363 F.3d at 1277; *see also Giovinale v. JP Morgan Chase Bank, N.A.*, No. H-16-986, 2017 WL 3535440, at *7 (S.D. Tex. Aug. 17, 2017) (nonmovant had "not established a dispute of material fact" where it "offer[ed] no contrary evidence."). Thus, there is "no genuine issue of material fact regarding

---

[18]  In addition, Plaintiff's "failure to prove direct infringement by any [JEDEC] compliant [device] necessarily dooms [any] allegations of indirect infringement, because '[a]bsent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement.'" *Id.* at 1277.

infringement and that [Plaintiff] failed to establish that the accused products and standards satisfied th[ese] [] limitation[s]" of the patent. *Fujitsu*, 620 F.3d at 1337.

## B. Judicial Estoppel Bars Plaintiff's Claims.

### 1. Judicial Estoppel.

The common law doctrine of judicial estoppel provides that a party cannot assert a claim in a legal proceeding that is inconsistent with a claim the party took in a previous proceeding. *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc). "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Johnson v. First Technology Federal Credit Union*, No. H-11-3812, 2013 WL 3787447, at *2 (S.D. Tex. July 18, 2013) (quoting *In re Coastal Plains*, 179 F.3d 197, 206 (5th Cir. 1999)); *accord Thomas v. Professional Law Firm and Corp. of Barret*, No. 4:13-CV-2481, 2013 WL 12156323, at *3 (S.D. Tex. Dec. 24, 2013) ("The purpose of the doctrine is 'to protect the integrity of the judicial process,' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'") (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).

In the Fifth Circuit, judicial estoppel applies if (1) the party against whom judicial estoppel is sought has asserted a legal position which is clearly

inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *In re Superior Crewboats Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 335 (5th Cir. 2004).

Defendant argues that Plaintiff is judicially estopped from arguing Defendant's computers with standardized DDR3 and DDR4 devices infringe the patent based on the stipulation reached in the *Smart* case. ECF No. 45 at 18.

### 2. Plaintiff asserted a legal position that is plainly inconsistent with a prior position.

#### a. *Plaintiff's allegations against Smart Modular Technologies.*

In the *Smart* case, Plaintiff accused Smart products that incorporate DDR3 and DDR4 devices of infringing claim 1 of the patent. Ex. 3 at ¶ 11,[19] 23,[20] ECF No. 46-3; *see also* Ex. 5 at 3, ECF No. 46-5. Plaintiff alleged that

> Smart Memory Modules DDR2, DDR3, and DDR4 do not directly infringe claim 1 of the '315 Patent because these memory modules do not include certain claimed elements of claim 1; however, when a Smart Memory Module DDR2, DDR3, or DDR4 is installed in operating systems such as test equipment, computers, servers and the like, claim 1 of the '315 Patent is directly infringed because these operating systems provide the missing elements of claim 1.

Ex. 5 at 3, ECF No. 46-5; *see also* Ex. 3 at ¶ 19, ECF No. 46-3.

---

[19] "Smart Modular sells and offers for sale at its web site memory modules DDR2, DDR3, and DDR4 for use in this Judicial District for infringing the '315 Patent."

[20] "Smart Modular directly infringes Claim 1 of the '315 Patent … during the development and/or testing of any of the memory products DDR2, DDR3, and/or DDR4…."

Plaintiff further alleged that "there are substantially no non-infringing uses of DDR2, DDR3, and DDR4 memory modules." Ex. 5 at 3, ECF No. 46-5; *see also* Ex. 3 at ¶ 11, ECF No. 46-3. Thus, he alleged that the only possible use of the DDR3 and DDR4 products directly infringes on the patent.

Plaintiff did not compare Smart's DDR3 and DDR4 products directly to the patent. Instead, he relied on comparison of the JEDEC standards to claim 1 of the patent to show direct infringement. For example, in his infringement contentions, he relied on *Fujitsu*:

> Previously, it has been the rule that to establish direct patent infringement, it is necessary to compare a product or process to a patent claim to show each and every element of the patent claim is present. This rule, however, no longer applies if there is an industry standard such as generated by JEDEC. The Federal Circuit has recently stated:
>
> > 'We hold that a district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. … [I]f an accused product operates in accordance with a standard, then comparing the claims to the standard is the same as comparing the claims to the accused product.'
>
> *Fujitsu Ltd. et al, v. Netgear Inc.*, 620 F.3d 1312 (Fed. Cir. 2010). Hence, to show direct patent infringement by Smart Modular, it is only necessary to compare the respective applicable JEDEC Standards for the DDR2, DDR3, and DDR4 memory products to claim 1…. Showing compliance with the JEDEC Standards is essential….

Ex. 5 at 5, ECF No. 46-5. Plaintiff further asserted that Smart's DDR3 and DDR4 products comply with the JEDEC standards. Ex. 3 at ¶¶ 9, 10, ECF No. 46-3.[21]

### b. *Plaintiff's settlement and stipulation in the* Smart *case.*

In the *Smart* case, the parties reached a settlement, agreed to a settlement term sheet, and filed it with the Court. Settlement Term Sheet, Ex. 7 to Shelton Dec., ECF No. 46-7. The settlement term sheet stated that "Goodman shall stipulate that **all accused products** do not infringe his U.S. Patent No. 6,243,315." Ex. 7, ECF No. 46-7 (emphasis added). The parties disputed the interpretation of the settlement term sheet (including the phrase of "accused products," and whether the term "infringe" included both direct and indirect infringement) and filed cross motions to enforce the settlement agreement. Ex. 8 to Shelton Dec., ECF No. 46-8; *Goodman v. Smart Modular Technologies., Inc.*, No. 4:14-CV-1380 (S.D. Tex., filed July 28, 2016), ECF No. 139.

The court held a hearing on August 23, 2016. Hr'g Tr., *Goodman v. Smart Modular Technologies*, No. 4:14-CV-1380 (S.D. Tex., filed Sept. 9, 2016), ECF No. 160. Plaintiff argued that he only agreed that "all accused products do not infringe" because he thought it was meaningless. *Id*. at 21:23-22:23. Plaintiff's

---

[21] "The relevant memory product[s] sold by Smart Modular are within the standards established by the JEDEC Solid State Technology Association. … Thus, any memory product identified as being DDR2, DDR3, or DDR4 implies that the memory product conform with the following JEDEC Standards JESD79-2F (for DDR2), JESD79-3F (for DDR3), or JESD79-4 (for DDR4), respectively."

position was, and still is,[22] that there were no "accused products" because the DDR3 and DDR4 products standing alone do not infringe the patent; they infringe the patent only when they are integrated into computers. *Id.* at 13:7-30:6.

The court rejected Plaintiff's interpretation. The court held:

> **[c]learly, the DDR2, DDR3, and DDR4 are the 'accused products,' as Goodman's own complaint indicates the only reasonable use of these three products is use that directly infringes on the '315 Patent and his entire lawsuit is about how these products, when used, infringe on the patent**. Moreover, if the court did not interpret the provision 'accused products' in paragraph 2 to incorporate the products discussed in the second amended complaint, then the entire paragraph would be meaningless, and contracts should be construed to give meaning to all terms. The fact that Goodman admits that he wanted the term to be meaningless is parole evidence not relevant to the court's interpretation of the plain and unambiguous meaning of the document.

Amended Order, Ex. 9 to Shelton Dec. at 7, ECF No. 46-9 (emphasis added). The court also ruled that the term "infringe" encompassed all types of infringement pursuant to 35 U.S.C. § 271, including both direct and indirect infringement. Ex. 9 at 7, ECF No. 46-9.

Thereafter, the parties entered into a stipulation that stated "Whereas, Plaintiff has alleged that Defendant's DDR2, DDR3, and DDR4 products (the 'Accused Products') infringe either directly or indirectly Plaintiff's U.S. Patent No. 6,243,315 (the '315 Patent)." Stipulation, Ex. 10 to Shelton Dec., ECF No. 46-10. It also stated "Plaintiff stipulates and requests that it be adjudged that none of

---

[22] ECF No. 53 at 4, 8.

the Accused Products infringe the '315 patent under 35 U.S.C. section 271." *Id.*

The court approved the parties' stipulation, Ex. 11 to Shelton Dec., ECF No. 46-11, and subsequently dismissed the case. Ex. 12 to Shelton Dec., ECF No. 46-12.

### c. *Plaintiff's allegations against HP.*

In this case, Plaintiff makes nearly identical allegations as in the *Smart* case.

Plaintiff accuses Defendant's products that incorporate DDR3 and DDR4 memory

devices as infringing claim 1 of the patent. ECF No. 1 at ¶¶ 10,[23] 28;[24] *see also id.*

at ¶¶ 8, 29, 30; Ex. 3 at 2, ECF No. 45-5. Plaintiff alleges that

> [a] glance at Claim 1 reveals that the DDR3 and DDR4 memory modules themselves cannot infringe Claim 1 because these memory modules do not include certain sub-system recited in Claim 1. When installed in computer systems, the DDR3 memory module interact with the memory boards of the computer systems to enable the computer system to take advantage of the operation of the memory module. This is possible because the computer system through the mother boards provides the other sub-systems recited in Claim 1. This is also true for the DDR4 memory modules.

Ex. 3 at 3, ECF No. 45-5; *see also* ECF No. 1 at ¶ 19.

In both his complaint and infringement contentions, Plaintiff does not

compare HP's DDR3 and DDR4 products directly to the patent. Like in the *Smart*

case, in his infringement contentions, he quotes *Fujitsu* and relies on the industry

---

[23] "HP makes, offers for sale many computer related products, including desktop computers, laptop computers, servers, and the like, and many of these HP computer related products incorporate memory products known in the industry as DDR3, DDR3L, DDR4, and LPDDR4 memory products."

[24] "All the limitations of Claim 1 of the '315 Patent are present in HP related computer products incorporating at least one DDR3, DDR3L, DDR4, or LPDDR4 memory product manufactured, offered for sale, and being sold directly or indirectly by HP in this Federal Judicial District."

standard to show infringement. Ex. 3 at 3-4, ECF No. 45-5; *see also id.* at 2-3.[25]

Plaintiff further asserts that Defendant's DDR3 and DDR4 products comply with

the JEDEC Standards.  ECF No. 1 at ¶¶ 10, 12, 13.

Plaintiff's complaint and infringement contentions in the *Smart* case are

nearly identical to those in this case. *Compare* ECF No. 1 *with* Ex. 3, ECF No. 46-

3; *compare* Ex. 3, ECF No. 45-5 *with* Ex. 5, ECF No. 46-5. Plaintiff conceded that

in both cases he alleged that Smart's and HP's DDR3 and DDR4 products

complied with the industry standard, and resulted in infringement of the patent

when used in a computer system. Oral Arg. at 10:42-10:44. He conceded that the

allegations in both cases were the same. *Id.* at 10:43. Plaintiff conceded that the

only difference is that the prior case involved Smart products and this case

involves HP products. *Id.* at 10:47.

Plaintiff primarily argues that he did not actually take the position that

"accused products" encompassed the DDR3 and DDR4 devices. ECF No. 53 at 4,

8. His position was that there are no "accused products."  ECF No. 53 at 4, 8.

However, the *Smart* court already rejected that interpretation as unreasonable.

---

[25] "The memory modules designated by the JEDEC Standards (see web site www.jed.org) as DDR3 and DDR4 memory modules interact with the memory boards of the computer systems to result in patent infringement. … The JEDEC Standards for the DDR3 and DDR4 memory modules establish the operations of these memory modules in a computer system, and the Standards discloses the inputs and outputs for the operations of the respective memory modules. … Thus, it is the interaction between a memory module complying with either JESD79-3F or JESD79-4-1 which is important for understanding the operation of a computer system including a DDR3 or DDR4 memory module."

Ex. 9 at 6-7, ECF No. 46-9. Plaintiff agreed to the settlement term sheet in mediation. Ex. 7, ECF No. 46-7.

Plaintiff further argued that the final stipulation was limited to *Smart* products only, and did not encompass all DDR3 and DDR4 products. ECF No. 52 at 4, 8-9. However, Plaintiff's allegations in both cases that the products infringe **because** they comply with JEDEC standards are fatal. Memory products that comply with the JEDEC standards are identical and interchangeable. Oral Arg. at 9:11-9:13. Plaintiff effectively stipulated that no computer incorporating standardized DDR3 or DDR4 memory devices directly or indirectly infringes his patent. "Such blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry." *In re Superior Crewboats, Inc.*, 374 F.3d at 330.

### 3. A court accepted Plaintiff's prior position.

It is beyond dispute that the court accepted Plaintiff's prior position. The court approved the parties' stipulation which stated "Plaintiff stipulates and requests that it be adjudged that none of the **Accused Products** infringe the '315 Patent under 35 U.S.C. Section 271." Ex. 11, ECF No. 46-11. The court then dismissed the case. Ex. 12, ECF No. 46-12.

### 4. Plaintiff did not act inadvertently.

Defendant presented evidence that shortly after stipulating that the accused products in the *Smart* case did not directly or indirectly infringe the patent,

Plaintiff sued HP for infringement on the same grounds. ECF No. 45 at 20. On August 31, 2016, the parties filed their stipulation. Ex. 10, ECF No. 46-10. On October 30, 2016, Plaintiff filed this suit. ECF No. 1.

In the interim, Plaintiff even filed two motions for reconsideration of the *Smart* court's order and amended order[26] regarding interpretation of the settlement term sheet and the phrase "accused products" (*Goodman v. Smart Modular Technologies, Inc.*, No. 4:14-CV-1380, ECF Nos. 152, 157), which were denied (*id.*, ECF No. 160). On October 16, 2016, Plaintiff appealed the Court's amended order (*id.*, ECF No. 171), which the Federal Circuit summarily denied. 698 Fed. Appx. 611, 2017 WL 4422870 (Fed. Cir. Oct. 5, 2017). While the appeal was pending, Plaintiff filed this suit against HP.[27] This was not inadvertent.

"The doctrine [of judicial estoppel] is generally applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Thomas*, 2013 WL 12156323, at *3 (citations omitted). It "applies in cases where a party attempts to contradict his own

---

[26] The amendments made to the court's amended order did not affect the court's interpretation of the settlement term sheet or the phrase "accused products." *Compare Goodman v. Smart Modular Technologies, Inc.*, No. 4:14-CV-1380 (S.D. Tex., filed Aug. 23, 2016), ECF No. 150 *with* Ex. 9, ECF No. 46-9.

[27] After entering into the stipulation in the *Smart* case, Plaintiff also filed virtually identical suits against ASUS Computer International, Samsung Electronics America, Inc., and Lenovo (United States) Inc. *See Goodman v. Lenovo (United States) Inc.*, No. 3:17-CV-6782 (N.D. Cal., filed Nov. 26, 2017), ECF No. 1; *Goodman v. Samsung Electronics America, Inc.*, No. 1:17-CV-5539 (S.D. N.Y., filed July 20, 2017), ECF No. 1; and *Goodman v. ASUS Computer Int'l*, No. 3:17-CV-5542 (E.D. Cal., filed Nov. 2, 2016), ECF No. 1.

sworn statements in the prior litigation." *Brandon*, 858 F.2d at 268. This is one of those circumstances. Defendant meets its burden to prove that all three elements of judicial estoppel are met and Plaintiff fails to create a genuine issue of material fact. Accordingly, judicial estoppel bars Plaintiff from arguing that standardized DDR3 and DDR4 memory devices, when used in a computer, infringe his patent.

## IV.
## CONCLUSION

The Court recommends that Defendant's Motion for Summary Judgment should be **GRANTED**. Plaintiff's complaint should be **DISMISSED WITH PREJUDICE** and judgment should be entered in favor of Defendant on Defendant's counterclaim for a declaration of non-infringement.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on July 16, 2018.


_____
Dena Hanovice Palermo
United States Magistrate Judge